**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Estate of Joseph J. Anzack, Jr.,                    :
by and through its Administrator,                   :
Casey J. Anzack,                                    :
                                                    :
        and                                         :
                                                    :
Estate of Theresa J. Anzack,                        :
by and through its Administrator,                   :
Casey J. Anzack,                                    :
                                                    :
        and                                         :
                                                    :
Casey J. Anzack,                                    :         **COMPLAINT**
                                                    :
        and                                         :
                                                    :
Joseph J. Anzack, Sr.,                              :
                                                    :
        and                                         :
                                                    :
Estate of James D. Connell, Jr.,                    :
by and through its Administrator,                   :
Brenda H. Connell,                                  :
                                                    :
        and                                         :
                                                    :
Estate of James D. Connell, Sr.,                    :
by and through its Administrator,                   :
Brenda H. Connell,                                  :
                                                    :
        and                                         :
                                                    :
Nicholas R. Connell,                                :
                                                    :
        and                                         :
                                                    :
Brenda H. Connell,                                  :
                                                    :
        and                                         :
                                                    :
Bryan T. Connell,                                   :
                                                    :
        and                                         :

Courtney L. Connell,                                  :
                                                      :
    and                           :
                                                      :
Ashley Billings,                                      :
                                                      :
    and                           :
                                                      :
Estate of Daniel W. Courneya,                         :
by and through its Administrator,                     :
Wendy Ralston,                                        :
                                                      :
    and                           :
                                                      :
Wendy Ralston,                                        :
                                                      :
    and                           :
                                                      :
Estate of Anthony J. Schober,                         :
by and through its Administrator,                     :
Roberta J. Kirchner,                                  :
                                                      :
    and                           :
                                                      :
Roberta J. Kirchner,                                  :
                                                      :
    and                           :
                                                      :
Estate of Rosemary M. Balian,                         :
by and through its co-Administrators,                 :
William Bennett and James Bennett,                    :
                                                      :
               Plaintiffs,  :
                                                      :
     v.                      :
                                                      :
SYRIAN ARAB REPUBLIC                                  :
Damascus, SYRIA,                                      :
                                                      :
and                                                   :
                                                      :
Syrian Military Intelligence                          :
Damascus, SYRIA,                                      :
                                                      :
              Defendants.  :

## COMPLAINT

Plaintiffs, by and through their undersigned counsel Meridian 361 International Law Group, PLLC, bring this action against Defendants the Syrian Arab Republic and Syrian Military Intelligence (hereinafter "Syria"), pursuant to the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* (hereinafter "FSIA").

This action is related to *Fouty v. Syrian Arab Republic*, 743 F. Supp. 3d 118 (D.D.C. 2024). In *Fouty*, litigation that also proceeded under the FSIA, this Court found that the terrorist organization founded by Abu Mus'ab al-Zarqawi (the "Zarqawi Terrorist Organization"), at that time known as the Islamic State of Iraq, conducted a terrorist attack on a U.S. Army post near Mahmoudiyah, Iraq on May 12, 2007 (the "Attack"). 743 F. Supp. 3d at 139-140, 142. The Court further found that Syria, a designated State Sponsor of Terrorism, provided material support and resources to the Zarqawi Terrorist Organization, a designated Foreign Terrorist Organization, and that the Attack was caused thereby. Id. at 132-133, 137, 153. The Court held Syria liable for the hostage taking, torture and extra-judicial killing of two U.S. Army servicemen abducted during the Attack, PVT Byron W. Fouty and SPC Alex R. Jiménez. Id. at 155-167.

This action has been brought by the estates of four U.S. Army servicemen killed by the Zarqawi Terrorist Organization in the same Attack, Private First Class (PFC) Joseph J. Anzack, Jr., Sergeant First Class (SFC) James D. Connell, Jr., PFC Daniel W. Courneya and Sergeant (SGT) Anthony J. Schober, and by their immediate family members. PFC Anzack was abducted during the Attack on May 12, and U.S. forces recovered his dead body on May 23. SFC Connell, PFC Courneya, SGT Schober and PFC Chritopher E.

3

Murphy were killed in the Attack. This action has also been brought by the estate of an immediate family member of PFC Murphy.

Plaintiffs state in support of their Complaint and allege the following:

## THE PARTIES

### A.    The Plaintiffs

1.    This action is brought by the Plaintiffs, by and through their counsel, each in their individual capacity and, as appropriate, in their capacity as Administrator, Executor or Personal Representative of the estates more particularly described in the caption of this action, for their own benefit, for the benefit of each estate and for the benefit and on behalf of all those legally entitled to assert a claim under the FSIA.

### The Anzack Family

2.    Plaintiff Casey J. Anzack is the biological sister of Joseph J. Anzack, Jr. Plaintiff Casey J. Anzack is and was at all relevant times a citizen of the United States of America. She resides in the State of California, and can sue and be sued in this Court.

3.    Plaintiff the Estate of Joseph J. Anzack, Jr. is represented in this action by its Administrator Casey J. Anzack. Joseph J. Anzack, Jr. was at all relevant times a citizen of the United States of America, and a member of the United States armed forces. Joseph J. Anzack, Jr. was a victim of "hostage taking", "torture" and "extrajudicial killing" as defined in the Torture Victim Protection Act, by 28 U.S.C. § 1350, and "personal injury" and "death" as required by the FSIA, 28 U.S.C. § 1605A(a)(1). Plaintiff the Estate of Joseph J. Anzack, Jr. can sue and be sued in this Court.

4.    Plaintiff the Estate of Theresa J. Anzack is represented in this action by its Administrator Casey J. Anzack. Theresa J. Anzack was the biological mother of Joseph J.

4

Anzack, Jr.   She was at all relevant times a citizen of the United States. Her estate can sue and be sued in this Court.

5.      Plaintiff Joseph J. Anzack, Sr. is the biological father of Joseph J. Anzack, Jr. Plaintiff Joseph J. Anzack, Sr. is and was at all relevant times a citizen of the United States of America. He resides in the State of California, and can sue and be sued in this Court.

### The Connell Family

6.      Plaintiff Nicholas R. Connell is the biological son of James D. Connell, Jr. Plaintiff Nicholas R. Connell is and was at all relevant times a citizen of the United States of America. He resides in the State of Alabama, and can sue and be sued in this Court.

7.      Plaintiff the Estate of James D. Connell, Jr. is represented in this action by its Administrator Brenda H. Connell.   James D. Connell, Jr. was at all relevant times a citizen of the United States of America, and a member of the United States armed forces. James D. Connell, Jr. was a victim of "extrajudicial killing" as defined in the Torture Victim Protection Act, by 28 U.S.C. § 1350, and "personal injury" and "death" as required by the FSIA, 28 U.S.C. § 1605A(a)(1). Plaintiff the Estate of James D. Connell, Jr. can sue and be sued in this Court.

8.      Plaintiff the Estate of James D. Connell, Sr. is represented in this action by its Administrator Brenda H. Connell.   James D. Connell, Sr. was the biological father of James D. Connell, Jr.   He was at all relevant times a citizen of the United States.   His estate can sue and be sued in this Court.

9.     Plaintiff Brenda H. Connell is the biological mother of James D. Connell, Jr. Plaintiff Brenda H. Connell is and was at all relevant times a citizen of the United States of America. She resides in the State of Tennessee, and can sue and be sued in this Court.

10.    Plaintiff Bryan T. Connell is the biological son of James D. Connell, Jr. Plaintiff Bryan T. Connell is and was at all relevant times a citizen of the United States of America. He resides in the State of Tennessee, and can sue and be sued in this Court.

11.    Plaintiff Courtney L. Connell is the biological daughter of James D. Connell, Jr. Plaintiff Courtney L. Connell is and was at all relevant times a citizen of the United States of America. She resides in the State of Tennessee, and can sue and be sued in this Court.

12.    Plaintiff Ashley Billings is the stepdaughter of James D. Connell, Jr. Plaintiff Ashley Billings is and was at all relevant times a citizen of the United States of America. She resides in the State of Utah, and can sue and be sued in this Court.

**The Courneya Family**

13.    Plaintiff Wendy Ralston is the biological mother of Daniel W. Courneya. Plaintiff Wendy Ralston is and was at all relevant times a citizen of the United States of America. She resides in the State of Michigan, and can sue and be sued in this Court.

14.    Plaintiff the Estate of Daniel W. Courneya is represented in this action by its Administrator Wendy Ralston. Daniel W. Courneya was at all relevant times a citizen of the United States of America, and a member of the United States armed forces. Daniel W. Courneya was a victim of "extrajudicial killing" as defined in the Torture Victim Protection Act, by 28 U.S.C. § 1350, and "personal injury" and "death" as required by the

FSIA, 28 U.S.C. § 1605A(a)(1). Plaintiff the Estate of Daniel W. Courneya can sue and be sued in this Court.

### The Schober Family

15.     Plaintiff Roberta J. Kirchner is the mother of Anthony J. Schober. Plaintiff Roberta J. Kirchner is and was at all relevant times a citizen of the United States of America. She resides in the State of Nevada, and can sue and be sued in this Court.

16.     Plaintiff the Estate of Anthony J. Schober is represented in this action by its Administrator Roberta Kirchner. Anthony J. Schober was at all relevant times a citizen of the United States of America, and a member of the United States armed forces. Anthony J. Schober was a victim of "extrajudicial killing" as defined in the Torture Victim Protection Act, by 28 U.S.C. § 1350, and "personal injury" and "death" as required by the FSIA, 28 U.S.C. § 1605A(a)(1). Plaintiff the Estate of Anthony J. Schober can sue and be sued in this Court.

### The Murphy Family

17.     Plaintiff the Estate of Rosemary M. Balian is represented in this action by its co-Administrators William Bennett and James Bennett, residing in the State of Virginia. Rosemary M. Balian was the biological mother of PFC Murphy. PFC Murphy was at all relevant times a citizen of the United States of America, and a member of the United States armed forces. PFC Murphy was a victim of "extrajudicial killing" as defined in the Torture Victim Protection Act, by 28 U.S.C. § 1350, and "personal injury" and "death" as required by the FSIA, 28 U.S.C. § 1605A(a)(1). Rosemary M. Balian was, at all relevant times, a citizen of the United States of America. Her estate can sue and be sued in this Court.

### B.    The Defendants

18.     Defendant Syria is a foreign state that was designated as a state sponsor of terrorism pursuant to section 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, section 620(A) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control Act, on December 29, 1979, and has remained so designated, continuously, ever since. Syria has been included on the U.S. State Department's list of State Sponsors of Terrorism longer than any other state.

19.     The U.S. State Department in its Country Reports on Terrorism 2009 states that in the late 1990s, Abu Mus'ab al-Zarqawi ("al-Zarqawi"), organized a terrorist group called al-Tawhid wal-Jihad ("TWJ") in opposition to the presence of U.S. and Western military forces in the Islamic world and also the West's support for the existence of Israel. In late 2004, al-Zarqawi joined al-Qaeda and pledged allegiance to Usama bin Laden. After this, TWJ became known as al-Qaeda in Iraq ("AQI"). Al-Zarqawi led AQI as its first Emir. In January 2006, AQI created and led the Mujahidin Shura Council ("MSC"), an umbrella organization incorporating the various Sunni terrorist groups in Iraq. Following the death of al-Zarqawi in June 2006, AQI was led by al-Zarqawi's appointed successor, AQI's second Emir, Abu Ayyub al-Masri a.k.a. Abu Hamza al-Muhajir ("al-Masri"). AQI claimed its attacks under the MSC banner until mid-October 2006, when the groups included in MSC rebranded themselves the Islamic State of Iraq ("ISI"). al-Masri served as military commander, War Minister and Prime Minister of ISI from October 2006 until his death in April 2010.

20.     Syria, at all times pertinent to this action, provided material support and resources to al-Zarqawi, to his successor al-Masri, and to the terrorist organization that al-Zarqawi and later al-Masri built and led, known alternatively as TWJ, AQI, MSC and ISI

(this terrorist organization under its successive names is commonly referred to, and is referred to for the purposes of this Complaint, as the "Zarqawi Terrorist Organization").

21.    Al-Zarqawi, al-Masri and the Zarqawi Terrorist Organization carried out a murderous campaign of terrorism in, among other places, Iraq and Jordan, with the sponsorship, material support and resources furnished by Syria. Syria, through its actions, is and has been a state sponsor of al-Zarqawi, al-Masri and the Zarqawi Terrorist Organization, within the meaning of 28 U.S.C. § 1605A by providing them with funding, equipment, arms, direction, logistical support, resources and/or training for their terrorist activities.

22.    Defendant Syrian Military Intelligence is the principal Syrian intelligence service through which Syria sponsored al-Zarqawi, al-Masri and the Zarqawi Terrorist Organization, which caused the terrorist acts described below.

23.    Each of Syria and Syrian Military Intelligence is directly and/or vicariously responsible for the actions of its co-Defendant because it materially supported and sponsored al-Zarqawi, al-Masri and the Zarqawi Terrorist Organization. Accordingly, Defendants are jointly and severally liable to Plaintiffs.

## JURISDICTION AND VENUE

24.    This Court has personal and subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A.

25.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state or a political subdivision thereof may be brought in the United States District Court for the District of Columbia.

26.    28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism for personal injury or death caused by an act of hostage taking, torture or extrajudicial killing, or the provision of material support and resources for such acts. The foreign state is liable for the acts of its officials, employees and agents.

27.    The right of action is controlled by federal law.

## THE MAY 12, 2007 TERRORIST ATTACK

28.    Initially, al-Zarqawi and the Zarqawi Terrorist Organization focused their operations on Jordan. With Syrian material support and resources, al-Zarqawi and the Zarqawi Terrorist Organization assassinated U.S. diplomat Laurence Michael Foley in Amman, Jordan in October, 2002. *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 196 (D.D.C. 2017). Further, with Syrian material support and resources, al-Zarqawi and the Zarqawi Terrorist Organization perpetrated "Jordan's 9-11," the simultaneous suicide bombing of the Radisson SAS, Grand Hyatt and Days Inn hotels in Amman, Jordan in November, 2005. *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22 (D.D.C. 2016).

29.    On March 20, 2003, a multinational force led by the United States invaded Iraq. The force toppled the regime of Saddam Hussein, and established a long-term presence intended to create the conditions necessary for the creation of a democratic form of government in Iraq. Syria formally opposed the invasion, as well as organized a secret terrorist war against Iraq and those seeking to support its new government. Syria's Foreign Minister stated publicly that it was in Syria's interest to see the American invasion of Iraq fail.

30.    As a result of the invasion, al-Zarqawi and the Zarqawi Terrorist Organization shifted their focus from Jordan to Iraq, and to ejecting the United States from Iraq. Al-Zarqawi concentrated his fighters in an area of Iraq known as the "Sunni Triangle" or "Triangle of Death," and commenced attacks on U.S. armed forces and civilians.

31.    Zarqawi Terrorist Organization terrorists developed a *modus operandi* that included kidnapping members of the United States armed forces and civilians, holding them in captivity, torturing them, and ultimately executing them. They used the Internet and news media outlets to publish images and videos of their prisoners in order to turn Western, and in particular, American, public opinion against the ongoing American presence in Iraq, and as part of their campaign to eject American forces from Iraq. Syria wanted to destabilize Iraq and prevent the United States from succeeding there. These were and are the shared political goals of the Zarqawi Terrorist Organization and the Syrian regime in Iraq.

32.    On April 9, 2004, with material Syrian support and resources, al-Zarqawi and the Zarqawi Terrorist Organization ambushed a fuel convoy traveling within the Sunni Triangle, and kidnapped U.S. Army Staff Sgt. Matt Maupin. The Zarqawi Terrorist Organization tortured Maupin, and later executed him, while he was in Zarqawi Terrorist Organization captivity. *Foley*, 249 F. Supp. 3d at 197.

33.    On September 16, 2004, with material Syrian support and resources, al-Zarqawi and the Zarqawi Terrorist Organization kidnapped American businessmen Olin E. "Jack" Armstrong and Jack L. Hensley.  The Zarqawi Terrorist Organization tortured both men, and later executed them, while they were in Zarqawi Terrorist Organization captivity. *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53 (D.D.C. 2008).

34.    On June 7, 2006, al-Zarqawi was killed in an air strike carried out by American forces. An MSC website immediately named al-Masri as Zarqawi's successor and the new leader of MSC. On June 15, 2006, the United States military acknowledged that al-Masri had succeeded al-Zarqawi as the new leader of MSC. The U.S. State Department acknowledges this succession in its Country Reports on Terrorism 2007, and notes that al-Masri issued a statement pledging to continue what al-Zarqawi began.

35.    On June 16, 2006, with Syrian material support and resources, al-Masri and Zarqawi Terrorist Organization terrorists ambushed an observation post, and abducted two soldiers, including U.S. Army Private First Class Kristian Menchaca, near Youssifiyah, Iraq and within the infamous "Triangle of Death". The Zarqawi Terrorist Organization tortured Menchaca, and later executed him, while he was in Zarqawi Terrorist Organization captivity. *Foley*, 249 F. Supp. 3d at 199.

36.    Zarqawi Terrorist Organization terrorists published or caused to be published videos which depicted the torture and killings of Kristian Menchaca, Olin E. "Jack" Armstrong, and Jack L. Hensley, among others.

37.    PFC Joseph J. Anzack, Jr. deployed to Iraq as part of the 4th Battalion, 31st Infantry Regiment, 2nd Brigade Combat Team, 10th Mountain Division.

38.    On May 12, 2007, with Syrian material support and resources, al-Masri and Zarqawi Terrorist Organization terrorists ambushed another observation post outside Mahmudiyah, Iraq, near the area in which Menchaca had been abducted, tortured and executed by the Zarqawi Terrorist Organization in June 2016. The terrorists attacked with small arms fire and explosives. They killed four U.S. Army soldiers during the attack, each of whom died of mortal wounds inflicted on them by the terrorists' small arms and

explosives, including SPC Connell, PFC Courneya, SGT Schober and PFC Murphy. They also abducted PFC Anzack, PVT Fouty and SPC Jiménez.

39.   United States forces backed by Iraqi army personnel commenced a search for the abducted men.

40.   On May 14, 2007, two days after the abduction, ISI posted statements to militant websites claiming responsibility for the kidnapping, and calling on United States forces to halt their search for PFC Anzack, PVT Fouty and SPC Jiménez if they wanted them back alive.

41.   On May 23, 2007, PFC Anzack's body was recovered from the Euphrates River some distance from the site of the ambush, with a gunshot wound to his head and multiple other grievous injuries.

42.   On June 4, 2007, ISI posted a 10-minute video branded with the logo of the ISI media production house to a militant website, and it was aired by television networks around the world. In an Arabic audio commentary on the video, ISI declared that it had killed SPC Jiménez and PVT Fouty because the United States had not heeded its warning to abandon the search effort.

43.   The ISI video included footage of three masked and black clad men standing around a stand displaying a diagram of the area of the abduction, apparently the planning stage of the attack. The ISI video also included nighttime footage of an actual attack. The ISI video then shows images taken from a broadcast by Arabic language television network al-Jazeera of coalition forces searching fields. The ISI video shows images of the personal effects of SPC Jiménez and PVT Fouty, including their credit cards, a crucifix, $50 bills and Iraqi currency. The ISI video concludes with close-up images of the official

Department of Defense military identification cards belonging to SPC Jiménez and PVT Fouty, bearing their names and photographs.

44.    Above the military identification cards, written in Arabic, appeared the message: "Bush is the reason for the loss of your POWs." ISI stated that SPC Jiménez and PVT Fouty were dead and buried, and mocked the United States by asserting that their bodies would never be returned or found.

45.    On June 9, 2007, coalition forces recovered personal effects of SPC Jiménez and PVT Fouty, including their Department of Defense military identification cards, along with video production equipment and computers, during the raid of a known ISI safe house near Samarra, Iraq, also within the "Sunni Triangle".

46.    On July 1, 2008, coalition forces captured a Zarqawi Terrorist Organization terrorist reported to be the leader of multiple Zarqawi Terrorist Organization cells, south of Baghdad. The captured Zarqawi Terrorist Organization terrorist stated that he knew where the bodies of SPC Jiménez and PVT Fouty could be found.

47.    On July 8, 2008, the captured Zarqawi Terrorist Organization terrorist led coalition forces to a site nearly 20 kilometers south of the May 12, 2007 ambush site, where he said the remains of SPC Jiménez and PVT Fouty were located. Coalition forces searched the area and identified human remains, handcuffs, and also various equipment and clothing belonging to SPC Jiménez and PVT Fouty.

48.    The hostage taking, torture and killing of PFC Anzack, SPC Jiménez and PVT Fouty are a continuation of the strategy and pattern set by the Zarqawi Terrorist Organization with its hostage taking, torture and extrajudicial killings of Maupin, Armstrong, Hensley, and Menchaca, among others. These terrorist acts and the

extrajudicial killings of SFC Connell, PFC Courneya, SGT Schober and PFC Murphy were intended to demoralize United States troops, and to terrorize the victims' families and all other United States civilians, in an effort to influence public opinion and policy-making and to eject the United States from Iraq.

### DEFENDANTS' PROVISION OF MATERIAL SUPPORT AND RESOURCES TO AL-ZARQAWI, AL-MASRI AND THE ZARQAWI TERRORIST ORGANIZATION

49.    Defendants' sponsorship of and provision of material support and resources to al-Zarqawi, his successor al-Masri and the Zarqawi Terrorist Organization must be understood in terms of the totalitarian nature of the Syrian regime, and in the context of its long history of employing terrorism as a tool for advancing its domestic and international agendas.

50.    At all times relevant to this litigation,[1] the Syrian Arab Republic was a republic in name only. In reality, it is a dictatorship and police state that strategically exhibits only the external forms of a democratic regime. Its constitution vests one particular party – the Arab Socialist Ba'ath Party – with leadership functions in the State and society. It also vests broad powers in the person of the President, making him Secretary General of the Ba'ath Party and leader of the National Popular Front, a coalition of smaller minority political parties that are authorized to exist by the regime in order to create the appearance of a multi-party political system. The President has the power to issue laws, and since 1963

---

[1] The Ba'athist regime that ruled Syria commencing in1966 and at all times relevant to this litigation was deposed on December 8, 2024.  The leader of the al-Nusra Front, which the U.S. Department of State designated as a Foreign Terrorist Organization, Abu Mohammed al-Jolani, became the President of Syria in a coup on January 29, 2025.

an Emergency Law has been in force that suspends most constitutional protections for Syrians. The President controls the legislative process.

51.     In 1966, Syrian Ba'athists conducted a coup d'etat. The Ba'athists eliminated all political parties in opposition. Hafez al-Assad was appointed Minister of Defence. Hafez al-Assad led another coup in 1970, in which the Ba'ath party was purged of internal opposition, its leaders were jailed, and Hafez al-Assad installed as President of the police state.

52.     The al-Assad family has controlled the Syrian regime without interruption for forty years, since 1971. Hafez al-Assad had a three-decade Presidency, lasting from 1971 to 2000, in which he was confirmed President in unopposed referenda five consecutive times. He was succeeded by his son Bashar al-Assad in 2000. Bashar al-Assad was confirmed as President, leader of the Ba'ath Party and leader of the Army, for a 7-year term, by an unopposed referendum held in 2001 in which he claimed 97.2% of the vote. He was re-appointed in another unopposed referendum in 2007, this time claiming 97.6% of the vote.

53.     Members of President al-Assad's own minority sect, the al-Awali clan, control most key positions in the Syrian military and Syrian intelligence and security services. The Ba'ath Party is heavily influenced by the Syrian military and Syrian intelligence and security services, the former consuming a large share of Syria's economic resources. The President and his senior aides in the Syrian military and Syrian intelligence and security services make most important decisions in Syrian political and economic life, and all critical national security decisions.

54.    There are more than a dozen security services in Syria, some overlapping in their domains, to make sure that the whole of Syrian territory is covered. These security services answer directly to President Bashar al-Assad, his brother General Maher al-Asad, commander of the Syrian Republican Guard, and his brother-in-law General `Asif Shawkat. General Shawkat was married to Bushra al-Assad, President al-Assad's sister. In 2001, General Shawkat was named Deputy Director of Syrian Military Intelligence, one of the main branches of the Syrian intelligence apparatus. From 2005 to 2009, he assumed control of the entire Military Intelligence apparatus. In July 2009, he was upgraded to the rank of General and named as deputy Chief of Staff. He died in July 2012.

55.    Syria is a dictatorship organized to maintain 100% control of Syria by the Assad family, and the minority sect which the family belongs to. The security services cannot and do not act on the scale required to facilitate, coordinate and support the insurgency, or any other foreign policies that are of a critical nature, in Iraq, al-Zarqawi, al-Masri or the Zarqawi Terrorist Organization without President al-Assad's explicit authorization.

56.    It is clear that support for al-Zarqawi, al-Masri, and the Zarqawi Terrorist Organization from Syrian territory or Syrian government actors could not have been accomplished without the authorization of the Syrian government and Syrian Military Intelligence through President al-Assad and General Shawkat. Syria's own Foreign Minister once publicly admitted, with reference to terrorist attacks carried out by the Abu Nidal Organization with Syrian material support and sponsorship, "Whoever knows my government must realize that such attacks could not be carried out without its awareness."

57.    A U.S. Department of State Bulletin published in 1987 states: "Available evidence indicates that Syria prefers to support groups whose activities are generally in line with Syrian objectives rather than to select targets or control operations itself. Damascus utilizes these groups to attack or intimidate enemies and opponents and to exert its influence in the region. Yet at the same time, it can disavow knowledge of their operations. Such Syrian-supported groups have carried out scores of attacks against Palestinian and other Arab, Turkish, Israeli, and Western targets…"

58.    The Bulletin lists many examples of Syrian material support and sponsorship of terrorism and terrorist organizations. A sampling of these includes:

a.    The suicide truck bombing of U.S. Marine barracks in Beirut, Lebanon, on October 23, 1983, in which 299 American and French servicemen were killed, an operation attributed by then U.S. Secretary of Defense Caspar Weinberger to "basically Iranians with sponsorship and knowledge and authority of the Syrian government";

b.    The July 1985 assassination of Jordanian diplomat Ziad Sati in Ankara, Turkey. Turkish authorities issued an arrest warrant for the Syrian Embassy Second Secretary, Mohammed Darwichi. The chief defendant in the trial, who was employed as a translator in the Jordanian embassy, carried a Syrian passport. During the trial, he confessed to having worked for Syrian intelligence, stating that his control officer was a Syrian diplomat in Turkey who had given the order to assassinate Sati;

c.    The hijacking of Egypt Air Flight 648 on November 23, 1985;

d. The simultaneous massacres of air passengers at the TWA and El Al ticket counters at the Fiumicino Airport in Rome, Italy, and the Schwechat Airport in Vienna, Austria, on December 27, 1985;

e. The March 29, 1986 bombing of the German-Arab Friendship Union in West Berlin, injuring 11 persons, which, according to the sworn statement of one of the convicted terrorists, Amad Hasi, was carried out using a bomb that he picked up at the Syrian Embassy in East Berlin from a Syrian Air Force intelligence officer;

f. The attempted bombing of El Al Flight 016 on April 17, 1986, which, according to the confession that convicted Jordanian terrorist Nezar al-Hindawi, the brother of Ahmad Hasi, made to British police, was planned with the help of Syrian military intelligence officers (including *inter alia* the Chief of Syrian Air Force Intelligence Brigadier General Nuhammad al-Khuli, one of President Hafez al-Asad closest aides), and the Syrian Ambassador in London, who supplied him with a Syrian passport, $12,000, Semtex explosives which he planted in the luggage of his pregnant Irish fiancée and a disguise as a Syrian Arab Airlines crew member;

g. The attempted bombing of an El Al plane on June 26, 1986, in Madrid, Spain, by a Spanish member of the Syrian sponsored Abu Musa terrorist organization, carrying a Syrian passport; and

h. Support and sponsorship of the Abu Nidal Organization, the Abu Musa Group, the Popular Front for the Liberation of Palestine, the Japanese Red Army, the

Kurdish Labor Party, the Armenian Secret Army for the Liberation of Armenia and the Lebanese Armed Revolutionary Faction.

59.    More recently, Syria has provided material support and sponsorship to Hamas, Hezbollah, Palestinian Islamic Jihad and the Zarqawi Terrorist Organization. United States federal courts have determined that Syria provided material support or resources to the Zarqawi Terrorist Organization in furtherance of the assassination of diplomat Laurence Foley in Amman, Jordan, the simultaneous suicide bombings of three Western hotels in Amman, Jordan, and the abduction, torture and executions of SSGT Maupin, civilian contractor Jack Armstrong, civilian contractor Jack Hensley, PFC Menchaca, PVT Fouty and SPC Jiménez in Iraq.

60.    Al-Zarqawi was arrested and imprisoned in Iran for a few weeks in early 2002. The Iranian authorities released him because he had a valid Syrian passport issued by the Syrian authorities, indicating that he worked for Syria. Syria is Iran's closest ally and the two countries have been partners in terrorism since the early 1980s. Al-Zarqawi left Iran for Syria, via Iraq.

61.    Al-Zarqawi was physically in Syria from May to September 2002. He used Syria as a base for plotting to assassinate Foley. He arranged for the Zarqawi Terrorist Organization conspirators to be trained in Syrian military barracks, and he provided supervision and organized financing for the assassination from Syria. Syria protected and refused to extradite Shaker al-Absi, a key al-Zarqawi associate responsible for financing the assassination, to Jordan.

62.    The U.S. Department of State, in its 2009 Country Reports on Terrorism, states: "Prior to 2005, AQI planned and conducted limited attacks in Jordan, including the

20

assassination of USAID official Laurence Foley in 2002." The report also found Syria continues to embrace terrorism as an instrument of policy. The report further noted Jordanian intelligence officials had intercepted the Zarqawi Terrorist Organization agents who were trying to enter Jordan from Syria to participate in a campaign of terrorism against Jordan.

63.    At all times relevant to this Complaint, Syria materially supported al-Zarqawi, his successor al-Masri and the Zarqawi Terrorist Organization in their campaign to use terrorism to destabilize Iraq and eject American forces from Iraq by *inter alia* (1) facilitating the recruitment and training of Zarqawi's followers and their transportation into Iraq, (2) harboring and providing sanctuary to Zarqawi Terrorist Organization terrorists and their logistical and supply network, and (3) financing al-Zarqawi, al-Masri and the Zarqawi Terrorist Organization.  In the words of the former defense minister of Iraq, Sa`dun al-Dulaimi: "We know the terrorists have no other gateway into Iraq but Syria."

64.    At all times relevant to this Complaint, Syria furnished various kinds of material support and resources, within the meaning of 28 U.S.C. § 1605A, including, but not limited to:

a.  the Zarqawi Terrorist Organization recruits received weapons in Syria and then they were smuggled into Iraq with the full knowledge of the Syrian security services;

b.  Funds raised by the Zarqawi Terrorist Organization in various Arab countries, especially in Jordan (al-Zarqawi's native country) and Saudi Arabia, were funneled through Syria; and

c. Zarqawi Terrorist Organization recruits were trained in Syrian military barracks and were given logistical support from the Syrian military security apparatus headed by General Shawkat, President Bashar al-Assad's brother-in-law and the second-most-powerful official in Syria.

65.     The comfort and safe haven provided by Syria and its security services allowed al-Zarqawi and other Zarqawi Terrorist Organization fighters to move back and forth between Iraq and Syria at will.

66.     When the Zarqawi Terrorist Organization publicly executed Maupin, Armstrong and Hensley, al-Zarqawi was physically present in Iraq, but Syria remained his haven. Al-Zarqawi operated by staying at the edges of the urban centers and close to the desert for escape routes. Therefore it is likely that from time to time he commanded the Zarqawi Terrorist Organization from within Syrian borders.

67.     The United States Department of State in its 2005 Patterns of Global Terrorism concluded Syria was a "facilitation hub for terrorists operating in Iraq . . ."

68.     In 2007, Senator Joseph Lieberman publicly charged: "Al-Qaida in Iraq is sustained by a transnational network of facilitators and human smugglers, who replenish its supply of suicide bombers – approximately 60 to 80 Islamist extremists, recruited every month from across the Middle East, North Africa and Europe, and sent to meet their al-Qaida handlers in Syria, from where they are taken to Iraq to blow themselves up to kill countless others."

69.     The U.S. Department of State, in its 2008 Country Reports on Terrorism, stated: "The United States continued its focused efforts to mitigate the threat posed by foreign fighters in Iraq. State sponsors of terrorism, Iran and Syria, continued to play

destabilizing roles in the region." It also noted that "nearly 90% of all foreign fighters entering Iraq are transiting from Syria."

70.    On February 28, 2008, pursuant to Executive Order 13224, which targets terrorists and those providing financial or other material support to terrorism, the U.S. Department of the Treasury designated Badran Turki Hishan Al Mazidih a.k.a. Abu Ghadiyah, and three other men.

71.    The Treasury designation states that al-Zarqawi had appointed Abu Ghadiyah as the Zarqawi Terrorist Organization's Syrian commander for logistics in 2004, and that after al-Zarqawi's death Abu Ghadiyah and the Zarqawi Terrorist Organization logistics network continued to work under the command of al-Zarqawi's successor al-Masri. The designation states that Abu Ghadiyah, from his base in Syria, ran the Zarqawi Terrorist Organization facilitation network, controlling the flow of money, weapons, terrorists and other resources through Syria into Iraq. It states that Abu Ghadiyah obtained and provided false passports, weapons, guides, safe houses and allowances to Zarqawi Terrorist Organization terrorists in Syria preparing to cross the border into Iraq.

72.    On October 28, 2008, after Syria's repeated refusals to capture, hand over or kill Abu Ghadiya and shut down the Zarqawi Terrorist Organization logistics network in Syria, U.S. special forces attacked Abu Ghadiya and the network on Syrian territory. The Assad regime condemned the American attack on the Zarqawi Terrorist Organization terrorists harboring in Syria as "serious aggression."

73.    Syria regarded the Zarqawi Terrorist Organization as indispensable for Syrian interests in the region. Syria fully supported the Zarqawi Terrorist Organization in order to inflict heavy causalities on the U.S. forces in Iraq so that the U.S. would be

compelled to withdraw in a humiliating manner from Iraq. This would make it more difficult than ever for the U.S to intervene to change the regimes in Syria or in Iran, Syria's close ally. By fully supporting the insurgency in Iraq and especially the Zarqawi Terrorist Organization, Syria has gained in prestige and stature in the Arab and Islamic worlds.

74.    Syria also supported the insurgency to protect itself against the spread of American democracy and the threat of a possible American invasion from Iraq. Paranoia descended upon Damascus and the Syrian regime after Iraq collapsed like a house of cards in the face of the American invasion. The United States Army was positioned next door with the explicit goal of spreading democracy to a neighborhood of tyrannical regimes, such as the dictatorship that ruled over Syria. Various US policy makers made statements regarding the wisdom of sending the troops into Damascus next. "'There's got to be a change in Syria', [Paul] Wolfowitz said in April, adding that the government was a 'strange regime, one of extreme ruthlessness.' At the same time, another prominent conservative closely associated with Wolfowitz and [Richard] Perle, former CIA director James Woolsey, was widely quoted on television as saying that the 'war on terrorism' should be seen as 'World War IV' that should include as targets 'fascists of Iraq and Syria.'"

75.    The provision of material support and resources to the Zarqawi Terrorist Organization to organize attacks on the U.S. military is a foreign policy that could have resulted in the end of the Syrian government if the U.S. had retaliated. Thus, it is a classic example of a foreign policy that could not have been organized or carried out without explicit knowledge and authorization from President Assad and key officers such as Shawkat.

76.    The provision of material support and resources to the Zarqawi Terrorist Organization, a known terrorist organization, by the government of Syria, acting directly and by and through their individual governmental leaders and representatives as named in the Complaint, and by other representatives of the government, constitute violations of applicable and numerous United States laws, thereby rendering the government of Syria and its security agencies, and their individual governmental representatives named as Defendants herein, jointly and severally liable for their illegal acts and deeds.

**COUNT I – BATTERY**
**(Under 28 U.S.C. § 1605A(c))**

77.    Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

78.    Members of the Zarqawi Terrorist Organization willfully, violently and forcefully committed terrorist acts using small arms and explosives – including *inter alia* the abduction, torture and execution of PFC Anzack, and the killings of SFC Connell, PFC Courneya, SGT Schober and PFC Murphy - with the express purpose of inflicting severe pain, suffering and death. The willful, wrongful and intentional acts of the Zarqawi Terrorist Organization, which were sponsored by all Defendants, constitute a battery upon the persons of PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy - causing injury to them as set forth above.

79.    Defendants performed, and President Bashar al-Assad and General `Asif Shawkat performed acts within the scope of their respective offices, which provided material support and resources to the Zarqawi Terrorist Organization and its terrorist activities, including but, not limited to, the kidnapping, torture and execution of PFC Anzack and the killing of SFC Connell, PFC Courneya, SGT Schober and PFC Murphy.

80.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi, al-Masri, other the Zarqawi Terrorist Organization terrorists, and the Zarqawi Terrorist Organization, which acts were committed with material support and resources provided by Defendants, as well as , President Bashar al-Assad and General `Asif Shawkat, PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs the Estate of Jospeh J. Anzack, Jr., the Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta J. Kirchner, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count I, and their costs expended, including attorneys' fees.

<u>**COUNT II – ASSAULT**</u>
**(Under 28 U.S.C. § 1605A(c))**

81.    Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

82.    During the abduction, torture and killing of PFC Anzack, Zarqawi Terrorist Organization terrorists intentionally and willfully put PFC Anzack in fear of his life and apprehension of harm and injury as a direct result of their actions in holding him against

their will, and the physical and mental abuse they inflicted upon him. Similarly, Zarqawi Terrorist Organization terrorists placed SFC Connell, PFC Courneya, SGT Schober and PFC Murphy in fear of their lives and apprehension of harm and injury as a direct result of their terrorists' actions in the Attack.

83.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi, al-Masri, other Zarqawi Terrorist Organization terrorists, and the Zarqawi Terrorist Organization, which acts were accomplished with material support and resources provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs the Estate of Jospeh J. Anzack, Jr., the Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta J. Kirchner, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count II, and their costs expended, including attorneys' fees.

**COUNT III - INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM
(Under 28 U.S.C. § 1605A(c))**

**(As to All Plaintiffs)**

84.    Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

85.    The kidnapping, torture and execution of PFC Anzack, and the killings of SFC Connell, PFC Courney, SGT Schober, PFC Murphy, and each and all of the acts set forth above, constitute extreme and outrageous conduct with the intent to inflict emotional distress, including solatium, upon PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, and the members of their respective families. Further these acts were undertaken for the purpose of causing mental duress and suffering, including solatium, upon PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, and the members of their respective families.

86.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi, al-Masri, other Zarqawi Terrorist Network terrorists, and the Zarqawi Terrorist Network, which acts were carried out with material support and resources provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, and their respective families, as above set forth, were each caused to suffer permanent and severe emotional distress.

**WHEREFORE,** Plaintiffs the Estate of Jospeh J. Anzack, Jr., the Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta J. Kirchner, the Estate of Rosemary M. Balian, and

each of them, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count III, and their costs expended, including attorneys' fees.

**COUNT IV – ACTION FOR WRONGFUL DEATH**
**(Under 28 U.S.C. § 1605A(c))**

87.    Plaintiffs the Estate of Joseph J. Anzack, Jr., the Estate of James D. Connell, Jr., the Estate of Daniel W. Courneya and the Estate of Anthony J. Schober, repeat, reallege and incorporate by reference the facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

88.    The deaths of PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy were caused by a willful and deliberate act of extrajudicial killing by Zarqawi Terrorist Organization terrorists, acting with material support and resources provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices.

**WHEREFORE,** Plaintiff the Estate of Joseph J. Anzack, Jr., by and through its Administrator Casey J. Anzack, the Estate of James D. Connell, Jr., by and through its Administrator Brenda H. Connell, the Estate of Daniel W. Courneya, by and through its Administrator Wendy Ralston, the Estate of Anthony J. Schober, by and through its Administrator Roberta J. Kirchner, and all other Plaintiffs entitled to assert the foregoing wrongful death claim under controlling law, and each of them, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pecuniary losses, which include, but are not limited to, the loss of future

earnings, and funeral and burial expenses, in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count IV, and their costs expended, including attorneys' fees.

**COUNT V – ACTION FOR SURVIVAL DAMAGES**
**(Under 28 U.S.C. § 1605A(c))**

89.     Plaintiffs the Estate of Joseph J. Anzack, Jr., the Estate of James D. Connell, Jr., the Estate of Daniel W. Courneya and the Estate of Anthony J. Schober, repeat, reallege and incorporate by reference the facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

90.     Before their deaths, PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy endured extreme bodily pain and mental anguish and suffering, entitling their respective Estates to compensatory damages.

91.     As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi, al-Masri, other Zarqawi Terrorist Organization terrorists, and the Zarqawi Terrorist Organization, carried out with material support and resources provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, and their respective families, as set forth above, were each caused extreme bodily pain and suffering, and mental and emotional pain, anguish and suffering, and pecuniary losses.

**WHEREFORE,** the Estate of Joseph J. Anzack, Jr., by and through its Administrator Casey J. Anzack, the Estate of James D. Connell, Jr., by and through its Administrator Brenda H. Connell, the Estate of Daniel W. Courneya, by and through its Administrator Wendy Ralston, the Estate of Anthony J. Schober, by and through its

30

Administrator Roberta J. Kirchner, and all other Plaintiffs entitled to assert the foregoing claim for survival damages under controlling law, and each of them, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count V, and their costs expended, including attorneys' fees.

## COUNT VI – ACTION FOR CONSPIRACY
### (Under 28 U.S.C. § 1605A(c))
### (As to All Plaintiffs)

92.    Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

93.    Defendants, as well as President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, did knowingly and willfully conspire with, and conspire to provide material support or resources to, a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the personal injuries and/or deaths of Plaintiffs.

94.    For the reasons stated above, and having conspired with, and conspired to provide material support or resources to, the terrorist organization which willfully and deliberately committed an act of terrorism which caused the personal injuries and/or deaths of Plaintiffs, Defendants are jointly and severally liable to Plaintiffs for all damages in this civil action.

**WHEREFORE,** Plaintiffs the Estate of Jospeh J. Anzack, Jr., the Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta J. Kirchner, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against Defendants in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count VI, and their costs expended, including attorneys' fees.

**COUNT VII – ACTION FOR AIDING AND ABETTING**
**(Under 28 U.S.C. § 1605A(c))**
**(As to All Plaintiffs)**

95.    Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

96.    Defendants, as well as President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, did knowingly and willfully provide material support and resources to a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the personal injuries and/or deaths of Plaintiffs.

97.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the personal injuries and/or deaths of Plaintiffs, all Defendants are jointly and severally liable to Plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs Estate of Joseph J. Anzack, Jr., Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta Kirchner, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against Defendants in the amount of **EIGHTEEN MILLION ($18,000,000.00) DOLLARS** plus pre-judgment and post-judgment interest, for each of them, on this Count VII, and their costs expended, including attorneys' fees.

**COUNT VIII - 28 U.S.C. §1605A(c)**
**(As to All Plaintiffs)**

98.     Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

99.     Zarqawi Terrorist Organization terrorists led by al-Masri, acting with material support and resources provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, willfully, wrongfully, intentionally, violently and forcefully, abducted, assaulted, tortured and murdered Joseph J. Anzack, Jr., while held captive, and killed SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, with the express purpose of inflicting personal injury, death, severe physical pain and suffering, severe emotional and mental anguish and duress, and pecuniary loss, upon them.

100.     Additionally, the acts of abducting, assaulting, torturing and murdering PFC Anzack, while held captive, and killing SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, constituted extreme and outrageous conduct with the intent and purpose

of inflicting emotional distress, including solatium damages, upon members of their respective families.

101.     The willful, wrongful and intentional acts of the Zarqawi Terrorist Organization terrorists were accomplished with material support and resources, sponsorship, aid, abetting, assistance and encouragement provided by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices.

102.     As a direct and proximate result of the willful, wrongful and intentional acts of the Zarqawi Terrorist Organization terrorists, whose acts were materially supported, sponsored, directed, aided, abetted, assisted and encouraged by Defendants, as well as by President Bashar al-Assad and General `Asif Shawkat acting within the scope of their respective offices, PFC Anzack was abducted, tortured and killed, while held in captivity, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy were killed, and they and their respective families endured extreme mental and emotional distress and anguish, solatium, physical injury, pain and suffering, death and pecuniary loss, all to their damage.

**WHEREFORE,** Plaintiffs Estate of Joseph J. Anzack, Jr., Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against Defendants for the damages that PFC Anzack and his Estate, SFC Connell and his Estate, PFC Courneya and his Estate, and SGT Schober and his Estate have endured, including, but not limited to, pain and suffering, wrongful death, mental and

34

emotional distress and anguish, pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) DOLLARS** plus pre-judgment interest and post-judgment interest, on this Count VIII, and their costs expended, including attorneys' fees; and for the damages that Theresa J. Anzack and her Estate, Casey J. Anzack, Joseph J. Anzack, Sr., James D. Connell, Sr. and his Estate, Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, Wendy Ralston, Roberta J. Kirchner and Rosemary M. Balian and her Estate have suffered, in the amount of **TWENTY-FIVE MILLION DOLLARS ($25,000,000.00)** plus pre-judgment interest and post-judgment interest, for each of them, on this Count VIII, and their costs expended, including attorneys' fees.

**COUNT IX – PUNITIVE DAMAGES**
**(Under 28 USC 1605A(c), P.L. 104-208, 110 Stat. 3009-172)**
**(As to All Plaintiffs)**

103. Plaintiffs repeat, reallege and incorporate by reference the facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

104. The actions of the Zarqawi Terrorist Organization, as set forth above, were intentional and malicious and in willful, wanton and reckless disregard of the rights and wellbeing of all Plaintiffs. All of the acts of al-Zarqawi, al-Masri and Zarqawi Terrorist Organization were facilitated by funding, training, and other material support, aid, assistance, resources and sponsorship provided by Syria, as well as by Syrian Military Intelligence, President Bashar al-Assad and General `Asif Shawkat.

105. The Defendants rendered material support and resources to the Zarqawi Terrorist Organization terrorists carrying out the terrorist acts above described. Under 28 U.S.C. § 1605A(c), the Plaintiffs are entitled to an award of economic damages, solatium, pain and suffering, as prayed for above herein; and are further entitled to an award of

punitive damages, designed to punish the Defendants, and each of them, jointly and severally, for their heinous conduct in providing material support and resources to the acts of terrorism that killed PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, and caused irreparable harm, loss, pain, suffering, death, pecuniary loss, mental and emotional anguish to all Plaintiffs, and solatium damages to each of the family members of PFC Anzack, SFC Connell, PFC Courneya, SGT Schober and PFC Murphy, each of whom is entitled to an award of punitive damages against the Defendants, and an award of punitive damages is hereby requested against the Defendants, jointly and severally, in accordance with the provisions of 28 U.S.C. § 1605A(c) making both a State that has been designated as a "state sponsor of terrorism" under § 6(j) of the Export Administration Act of 1979, and an official, employee, or agent of such a State, liable for economic damages, solatium, pain and suffering, and punitive damages.

106. As required by 28 U.S.C. § 1605A(c), each of President Bashar al-Assad and General `Asif Shawkat was acting within the scope of his respective office, employment or agency when he supplied, facilitated or authorized the provision of material support or resources to al-Zarqawi, al-Masri and Zarqawi Terrorist Organization and the execution of its terrorist attacks.

**WHEREFORE,** Plaintiffs Estate of Joseph J. Anzack, Jr., Estate of Theresa J. Anzack, Casey J. Anzack, Joseph J. Anzack, Sr., the Estate of James D. Connell, Jr., the Estate of James D. Connell, Sr., Nicholas Connell, Brenda Connell, Bryan Connell, Courtney Connell, Ashley Billings, the Estate of Daniel W. Courneya, Wendy Ralston, the Estate of Anthony J. Schober, Roberta J. Kirchner, the Estate of Rosemary M. Balian, and each of them, demand that judgment be entered, jointly and severally, against Defendants

in the amount of **THREE HUNDRED MILLION DOLLARS ($300,000,000.00)** for each act of murder, separately for each Plaintiff, on this Count IX, and their costs expended. The award of punitive damages, as requested, is to punish Defendants for their conduct in supporting terrorism and the murderous terrorist acts described herein, and to send a message to them and to others that the United States of America and its citizens respond to lawless acts of terrorism with the application of orderly justice.

**ADDITIONAL RELIEF REQUESTED**

WHEREFORE, Plaintiffs request joint and several judgment against the Defendants as follows:

1. Awarding to Plaintiffs compensatory, economic, pain and suffering and solatium damages against Defendants in amounts set forth herein and as shall be determined at trial;

2. Awarding to Plaintiffs punitive or exemplary damages against Defendants, jointly and severally, according to proof to be presented at trial;

3. Awarding to Plaintiffs prejudgment interest and post-judgment interest on all damages awards computed and calculated at the maximum rate allowable by law;

4. Awarding to Plaintiffs an explicit and separately quantified adjustment of all damages awards that are based on amounts set in historical precedent, in order to offset the effects of inflation on the value of those awards;

5. Awarding to Plaintiffs their costs, disbursements, expert fees and legal fees;

6. Allowing a *lis pendens* notice of action to issue and be noted and enforced by the Court as against each of the Defendants and their instrumentalities;

7. Leave to amend this Complaint as the interests of justice may allow; and

8.  Granting any and all such further relief as the Court may deem just and proper.

DATED:  May 29, 2025.

Respectfully submitted,

_____

F. R. Jenkins, Esq.
(D.C. Bar No. 1615786)
MERIDIAN 361 INTERNATIONAL LAW
GROUP, PLLC
400 Congress Street, No. 7040
Portland, Maine
United States of America
Telephone: 866-338-7087
Facsimile: 202-315-3894
www.meridian361.com